CHARLES McBURNEY *vs.* CHARLES GOODYEAR.

A reissue of an old patent, which has been surrendered on account of defective specifications, does not constitute a new patent; and an existing contract concerning the patent, before its surrender, applies equally to it after the surrender and reissue.

G. executed the following contract with B.: "In consideration of one dollar to me in hand paid, the receipt whereof is hereby acknowledged, I engage to grant to B. license to manufacture, under my patents and improvements, India Rubber Hose in general, except that made of pure gum, and to obtain the assent of the Naugatuck company to said license. It is understood that said B. shall pay a tariff, the same per square yard as that paid by the Goodyear company upon belting. In the event of the right of said hose being disposed of, said B. is to receive one half the bonus obtained therefor, it being optional with him to retain, if he prefers it instead, a half right to manufacture under said tariff." *Held,* that B. thereby obtained an immediate right to manufacture hose, and not merely an obligation for a future right, and that he could recover one half of the amount received by G. for a subsequent sale by him of the right to manufacture said hose.

MERRICK, J. This action is brought to recover one half the money received by the defendant of Fowler M. Ray and of the Boston Belting company for the right sold by him to them, to manufacture hose under his patents.

On the 11th of February, 1847, the defendant made an agreement with the plaintiff, in writing, in the terms following, to wit: " New Haven, February 11, 1847. In consideration of one dollar to me in hand paid, the receipt whereof is hereby acknowledged, I engage to grant to Charles McBurney, Esquire, license to manufacture, under my patents and im-

48 *

provements, India Rubber hose in general, except that made of pure gum, and to obtain the assent of the Naugatuck company to said license. It is understood that said McBurney shall pay a tariff, the same per square yard as that paid by the Goodyear company upon belting. In the event of the right of said hose being disposed of, said McBurney is to receive one half the bonus obtained therefor, it being optional with him to retain, if he prefers it instead, a half right to manufacture under said tariff. Charles Goodyear."

From the report of the judge, before whom the action was tried, it appears that this agreement was entered into by the defendant upon a good consideration; and that afterwards, on the 19th of April, 1850, he sold and conveyed to the Boston Belting company, for the sum of five thousand dollars, the right to manufacture hose under his patents. It also appears, from evidence adduced at the trial, the competency of which was then objected to, but which objection is now waived, that on the 5th of February, 1851, for the sum of twenty-five hundred dollars, he sold and conveyed to Fowler M. Ray, of New York, the right to manufacture, under his patents, hose pipe, and tubing.

Before the commencement of this action, the plaintiff demanded of the defendant one half of the money so received by him upon said sales. Beside that demand. it is conceded that the plaintiff never made any choice or election under said agreement.

The defendant first insists that the sales made by him to Ray and to the Boston Belting company were not sales of rights to manufacture hose under the patents referred to in the said agreement; and, therefore, that the plaintiff has no right to recover the money sued for. In reference to this subject, the report shows that the defendant, in the year 1848, and subsequent to the time when he made said agreement with the plaintiff, surrendered, under the law of the United States, his original letters-patent, on account of some defect in the specification upon which they had been obtained, and received therefor a reissue thereof, which he held when he made said sales to Ray and the Boston Belting company.

The defendant did not in that way acquire any new patent. It was not the object of the *St.* of 1836, under which he proceeded, and which allowed him so to proceed, to create or to confer any new or distinct right; but it was enacted for the express purpose of establishing, maintaining, and confirming a grant, which had already, though imperfectly, been made. Accordingly, it has become the settled rule of construction, that upon the reissue of letters-patent under this statute, their duration is limited to the unexpired term of the old which was surrendered. Curtis on Patents, § 183. There is a marked and well-recognized distinction between the renewal and the reissue of a patent. The former grants a wholly new term, the latter only legalizing and conferring the right during the continuance of the original term. But this confirmation operates for the common benefit and advantage of all parties who have previously acquired an interest in its maintenance. For it is not in the power of a patentee, by a surrender of his patent, injuriously to affect the rights of third parties to whom he has already, by assignment, passed his interest in the whole or a part of his patent. They will share with him in all the benefits that a reissue confers. *Woodworth* v. *Stone*, 3 Story, R. 749; *Wilson* v. *Rousseau*, 4 Howard, 646. The sales, therefore, which were made by the defendant to Ray and the Boston Belting company, were not under a patent different from that referred to in the agreement of the parties; and any objection to the maintenance of the action on account of such supposed difference cannot be allowed to prevail.

But the defendant further objects that by the aforementioned agreement he neither granted nor conveyed, nor stipulated to grant or convey to the plaintiff any present right to manufacture hose under his patent, but only contracted that he would at some future time give him a license or make him a grant to that effect. And he contends that until such grant has been made, a license given the plaintiff can by no election entitle himself to half the bonus or price for which the right to manufacture hose under the patent has been sold.

A true construction, however, of the particular terms of their agreement leads to an entirely different conclusion. Its lan-

guage is, that " in the event of the right of said hose," that is, the right to manufacture hose under the defendant's patent, " being disposed of, said McBurney is to receive one half the bonus obtained therefor, it being optional with him to retain, if he prefers it instead, a half right to manufacture under said tariffs." This is direct, and perfectly explicit. Upon disposal of the right, McBurney became at once entitled to a moiety of the bonus or consideration of the sale. His title to it was not made to depend in the least degree upon any further or other act of the defendant. There is but one provision in the agreement under which he can be restrained from sharing in the proceeds of such a sale. If he elected instead to take a half right to manufacture, and that were thereupon conveyed to him, he would be confined to it, and could have no more. But he made no such choice. On the contrary, he impliedly rejected it by demanding the money, and thereby entitled himself unconditionally to its recovery.

But if the position assumed by the defendant were allowed, it could not, upon the facts reported, avail him in defence of this action. By his sales to Ray and the Boston Belting company he parted with his entire right to manufacture hose under his patent. He could no longer convey a half right to the plaintiff, and it would have been a vain and useless thing for the latter to have chosen or demanded it. As the defendant had left the plaintiff no alternative but to take the money, his right to receive it became absolute and indisputable.

There is no force in the objection that the election of the plaintiff was not made in a reasonable time, and that the defendant is for that reason absolved from all responsibility under his agreement. From several considerations it seems probable that the parties did not, at the time it was made, expect any immediate action under it. It was stipulated that the defendant should obtain for the plaintiff the assent of the Naugatuck company to the license given or to be given to him, plainly intimating thereby that without such assent the plaintiff could not safely proceed in the proposed manufacture. It is worthy of some attention also that when the parties made their agreement, and from thence up to the time

of the reissue of the letters-patent, the specification upon which the original patent was obtained, was so incomplete and imperfect that no one could work under or in conformity to it.

Considering, therefore, that for a large part of the time, from the date of the agreement to the time when the sales were made to Ray and the Boston Belting company, the imperfection of the specification, upon which the letters-patent issued, made them of uncertain security and of doubtful value, and that there has existed an impediment to all active operations in an outstanding claim of some kind of the Naugatuck company, which does not appear ever to have been extinguished, there seems to be no good reason upon which to affirm that the plaintiff delayed for an unreasonable time to make his election.

We are, therefore, of opinion that the plaintiff is entitled to recover one moiety of the money received by the defendant upon the sales aforesaid, with interest from the date of the writ; and judgment is to be entered therefor.

*H. F. Durant,* for the plaintiff.

*H. Jewell,* for the defendant.